Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
George J. Theofanis, SBN 324037
george.theofanis@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:     916-840-3150
Facsimile:     916-840-3159

Attorneys for Defendant KEYBANK
NATIONAL ASSOCIATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORSHA McDANIELS, on behalf of herself and all others similarly situated, and the general public<br><br>Plaintiff,<br><br>vs.<br><br>KEYBANK NATIONAL ASSOCIATION, a domestic corporation; and DOES 1 through 50, inclusive<br><br>Defendant. | Case No.<br><br>**DEFENDANT KEYBANK NATIONAL ASSOCIATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Adam Larkins, Kate Gehring, Amy Gerbec, Jessika Poldruhi, Aishwarya Kanthappan, and George Theofanis in Support of Removal]<br><br>[Contra Costa Superior Court Case No. C24-01273]<br><br>Action Filed:     5/13/2024<br>Trial Date:       TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF PORSHA McDANIELS AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant KEYBANK NATIONAL ASSOCIATION ("Defendant" or "KeyBank"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441, 1446 and 1453.[1]  In support of such removal, KeyBank states as follows:

1.      KeyBank removes this action on the grounds that: (a) there is complete diversity of citizenship between Plaintiff Porsha McDaniels ("Plaintiff"), a citizen of the State of California, and KeyBank, a citizen of the State of Ohio; and (b) the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in Section 1332(a).

2.      Alternatively, Plaintiff's claims, as alleged in the Complaint, are removable under the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)) ("CAFA"): (a) there are at least 100 class members in all proposed Plaintiff classes; (b) the combined claims of all class members exceed $5 million exclusive of interest and costs; and (c) minimum diversity exists. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

## I.      THE STATE COURT ACTION

3.      On May 13, 2024, Plaintiff, by and through her attorney, filed a civil action in the Superior Court of the State of California for the County of Contra Costa, entitled: *Porsha McDaniels, on behalf of herself and all others similarly situated, and the general public, Plaintiff, v. KeyBank National Association, a domestic corporation; and DOES 1 through 50, inclusive, Defendant* (Case No. C2401273).  (Declaration of George J. Theofanis ("Theofanis Decl.") ¶2 **Ex. A** [Pl.'s Compl.].)

4.      The Plaintiff's Class Action Complaint asserts individual and class claims for: (1) Failure to Pay Hourly Wages and Overtime (*Lab. Code,* §§ 223, 510, 1194, 1194.2, 1197, 1197.1

---

[1] The foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the filing of this notice of removal, as is more fully set forth below.

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

and 1198); (2) Failure to Pay Proper Sick Pay (*Lab. Code,* § 246); (3) Failure to Provide Accurate Written Wage Statements (*Lab. Code,* § 226(a)); (4) Failure to Timely Pay All Final Wages (*Lab. Code* §§ 201, 202 and 203); (5) Failure to Indemnify (*Lab. Code,* § 2802); and (6) Unfair Competition.  (*Bus. & Prof. Code*, § 17200 *et seq.*) (Pl.'s Compl.)

5.     On May 20, 2024, KeyBank's registered agent for service of process was served with copies of the Summons, Complaint, Civil Case Cover Sheet, and court Order, for the state court action.  (Theofanis Decl. ¶3 **Ex. B** [Docs. Served on Def.])

6.     On June 18, 2024, KeyBank filed and served its Answer to Plaintiff's Complaint. (Theofanis Decl. ¶4 **Ex. C** [Def.'s Answer.])

7.     As set out more fully below, this action is one over which this Court has original jurisdiction and is one that may be removed to this Court under 28 United States Code §§ 1332(a), 1441(a) and 1446, because this matter is between citizens of different states and the amount in controversy based on Plaintiff's claims alone is greater than $75,000, as set forth below.

8.     In addition, Plaintiff's claims, as alleged in the Complaint, are also removable under CAFA because there are over 100 putative class members, the combined claims of all class members exceed $5 million exclusive of interest and costs; and minimum diversity exists between the Parties.

## II.     <u>REMOVAL IS TIMELY</u>

9.     The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the Defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).  Defendant is not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id.* ("[N]otice of removability...is determined through examination of the four corners of the applicable pleadings, <u>not</u> through subjective knowledge or a duty to make further inquiry" by Defendant.).

10.     The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to

removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants *do* conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that defendants could have removed a case earlier based on information contained within its own records fails.

11.    Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class.

12.    The Complaint does not provide an estimate as to the number of putative class members, their average hourly rate of pay, the frequency of alleged violations of the California Labor Code, nor estimates as to Plaintiff's own experiences. *See*, Complaint, *passim*. Accordingly, the time to remove has not yet begun and Defendant may remove based upon its own investigation. *Harris, supra*, 425 F.3d at 694.

13.    Accordingly, Defendant's removal is timely.

### III.    PLAINTIFF'S COMPLAINT IS REMOVABLE UNDER DIVERSITY JURSIDICTION

14.    The basis for removal is that this Court has original jurisdiction of this action under 28 U.S.C. §1332 and it is one which may be removed to this Court by KeyBank, pursuant to 28 U.S.C. §1441(b), in that it is a civil action wherein the amount in controversy exceeds $75,000, exclusive of interests and costs, and is a civil action between citizens of different states such that complete diversity exists.  Removal based on Plaintiff's individual claims is appropriate, even though the Complaint is filed as a class action, so long as the amount in controversy of Plaintiff's individual claims "exceeds the sum or value of $75,000." *See, Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014) (recognizing that removal based on Patel's individual claims appropriate in wage-and-hour class action complaint).

15.    Under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file a "notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 553 (2014). This

language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement short and plain need not contain evidentiary submissions." *Id.* at 551, 553.

16.     Both of the requirements for subject matter jurisdiction based on diversity jurisdiction are met here and this case is removable to this Court because: (a) there is complete diversity of the parties; Plaintiff is a citizen of California, and KeyBank is a citizen of Ohio; and (b) the amount in controversy exceeds $75,000.

**A.     The Citizenship of The Parties is Diverse.**

**1.     Plaintiff is a Citizen of California.**

17.     For diversity purposes, an individual is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place she resides with the intention to remain or to which she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

18.     As set forth in the Complaint, Plaintiff "is, and at all relevant times mentioned herein, an individual residing in the State of California." (Pl.'s Compl. ¶5.)

19.     Plaintiff also reported to KeyBank that she is a California resident during her employment, including, among other actions, providing a California address, indicating that she is a California resident, and completing California tax withholding forms.  (Declaration of Katherine Anne Gehring ("Gehring Decl.") ¶4.)

20.     Accordingly, Plaintiff is domiciled in and for purposes of diversity jurisdiction is a citizen of the State of California.

**2.     KeyBank is Not a Citizen of California.**

21.     National banks are "deemed citizens of the States in which they are respectively located."  (28 USC § 1348.)  A bank is "located" only where it has its main office, not where it maintains branch offices.  *Wachovia Bank v. Schmidt*, 546 US 303, 306-307(2006); *Rouse v. Wachovia Mortg., FSB*, 747 F3d 707, 709 (9th Cir. 2014) (holding  that a national bank is only a citizen of the state of its main office, even if its principal place of business is in a different state).

22.     Here, KeyBank was, at the time of the filing of this lawsuit, and still is, a national

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

bank headquartered in Cleveland, Ohio, with its main office and principal place of business in the State of Ohio.  (Declaration of Adam Larkins ("Larkins Decl.") ¶4.)  The majority of KeyBank's executives and administrative functions, including operations management, human resources, finance, information technology, business operations, and its legal and marketing functions, are based out of its headquarters in Cleveland, Ohio.  (*Id.*) Therefore, at all material times, KeyBank has been a citizen of the State of Ohio.

23.    The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. See 28 U.S.C. § 1441(b)(1); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered).

24.    Thus, complete diversity exists between Plaintiff and KeyBank.

**B.    <u>The Amount In Controversy Exceeds $75,000.</u>**

25.    "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart,* 135 S. Ct. at 554. Legal certainty of the amount in controversy is not required. *See Rodriguez v. AT&T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("[a] defendant seeking removal . . . must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum"). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).[2]

26.    To meet this relatively low burden regarding the amount in controversy, a defendant *may* rely on plaintiff's allegations, which are *assumed to be true*, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Rippee v. Bos. Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount

---

[2] KeyBank discusses the allegations in Plaintiff's Complaint solely for purposes of demonstrating that the amount in controversy, as pled, exceeds $75,000.  By doing so, KeyBank in no way concedes that Plaintiff is entitled to damages in excess of the jurisdictional minimum, or to any damages at all.

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT
62531979.v1-OGLETREE

1  in controversy"). In determining whether the jurisdictional minimum is met, the Court considers all

2  recoverable damages, including compensatory damages, emotional distress damages, punitive

3  damages, statutory penalties, and attorney's fees. *Hunt v. Washington State Apple Advert. Comm'n*,

4  432 U.S. 333, 347–48 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir.

5  1998).

6       27.    Removal is proper if, from the allegations in the Complaint and the Notice of

7  Removal, it is more likely than not that the value of Plaintiffs' claims exceeds $75,000. *Sanchez v.*

8  *Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996); *Luckett v. Delta Airlines, Inc.,* 171

9  F.3d 295, 298 (5th Cir. 1999).

10       28.    KeyBank's notice of removal "need not contain evidentiary submissions." *See Dart*

11  *Cherokee Basin Operating Co., LLC,* 574 U.S. at 84. In showing the amount in controversy,

12  KeyBank "may rely on reasonable assumptions." *See Arias v. Residence Inn,* 936 F.3d 920, 922

13  (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . .

14  . [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could

15  reasonably recover" on a complaint at the time of removal. *Id.* at 927. Moreover, "[a]n assertion

16  that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because

17  it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation

18  marks omitted).

19       29.    It is permissible for KeyBank, when the Complaint does not provide clear

20  indications of the amount in controversy, to rely on employee data and reasonably assumed

21  violation rates based upon the Complaint when determining the amount in controversy. *See Arias,*

22  936 F.3d at 927. KeyBank may rely on "a chain of reasoning that includes assumptions." *Ibarra v.*

23  *Manheim Invs., Inc.,* 775 F.3d at 1199. KeyBank does not need to "provide evidence proving the

24  assumptions correct." *Arias,* 936 F.3d at 927. Instead, "assumptions made part of the defendant's

25  chain of reasoning need not be proven; they instead must only have 'some reasonable ground

26  underlying them.'" *Id.* (citation omitted).

27  ///

28  ///

30.     While KeyBank denies any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

**C.     The Claims at Issue in Determining the Amount in Controversy in this Action**

31.     In the Complaint, Plaintiff seeks, among other things, damages for:  (1) allegedly unpaid overtime wages; (2) allegedly unpaid sick pay; (3) allegedly unpaid wage statement penalties pursuant to *Labor Code* sections 226 and 226.3; (4) allegedly unpaid waiting time penalties; (5) allegedly unreimbursed business expenditures; and (6) attorneys' fees and costs.[3] As set forth below, even when factoring in potential amounts in controversy for fewer than all claims asserted, including only Plaintiff's claims for wage statement penalties, unreimbursed business expenses, and attorney's fees and costs, the amount in controversy still well exceeds the $75,000 amount in controversy requirement.

**D.     The Relevant Time Period and Plaintiff's Data**

32.     The general statute of limitations governing civil actions for unpaid wages is three years for wage liabilities created by statute. Ca. Civ. Pro. §338(a); *Cuadra v. Millan* 17 Cal.4th855, 859 (1998), *disapproved on other grounds in Samuels v. Mix* 22 Cal. 4th1, 91. Nevertheless, the limitation for actions under California's Unfair Competition Law (UCL) is four years. Cal. *Bus. & Prof. Code* §17200 *et seq.* Here, Plaintiff has alleged a UCL claim alongside her statutory wage claims. As such, the relevant statutory period for Plaintiff's unpaid wage claims (which normally carry three-year statutes of limitations) begins four years prior to the filing of the Complaint – from **May 13, 2020 to the present** (i.e., the **Relevant Time Period**).

33.     According to KeyBank's business records, Plaintiff has worked for KeyBank from **May 31, 2022, to present,** as an hourly non-exempt full time employee, which is shorter than and within the Relevant Time Period. (Declaration of Jessika Poldruhi ("Poldruhi Decl.") ¶7.)

---

[3] Although not all of Plaintiff's claims are considered in the amount in controversy, if Plaintiff or the court challenges federal court jurisdiction over this matter, KeyBank reserves the right to place such additional claims and amounts in controversy.

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

34.    During the Relevant Time Period, Plaintiff worked **23 months** for KeyBank. (Declaration of Aishwarya Kanthappan ("Kanthappan Decl.") ¶10.)

35.    During the 1 year statutory period for wage statement claims beginning May 13, 2023, to the present, Plaintiff worked **22 biweekly payroll periods**. (Kanthappan Decl. ¶11.)

### 1.    Plaintiff's Failure to Furnish Accurate Itemized Wage Statement Claim Places at Least $2,150 to the Amount in Controversy.

36.    Plaintiff alleges that Defendant simply failed to provide wage statements in paper format. (Pl.'s Compl. ¶61).

37.    The Complaint seeks damages in the amount of $50.00 for the initial pay period in which violations ostensibly occurred, and $100 for each subsequent pay period in which the violations ostensibly occurred. (Pl.'s Comp. ¶ 65).

38.    *Labor Code* section 226(e) claims statutory penalties have a one-year statute of limitations. See Code Civ. Proc. § 340(a). Thus, the applicable statute of limitations for this claim is from May 13, 2023, to present.

39.    A review of KeyBank's business records confirms that KeyBank paid wages to Plaintiff on a biweekly basis. (Kanthappan Decl. ¶¶11, 14). Based on records available to KeyBank, Plaintiff worked **22 biweekly payroll periods**, and she alleges she received a compliant wage statement for none. (*Id.*)

40.    Thus, Plaintiff's allegations place an amount in controversy of **$2,150.** (1 * $50 = $50 [initial pay period]) + (21 * $100 = $2,100) = $2,150). (Kanthappan Decl. ¶14).

### 2.    Plaintiff's Unreimbursed Business Expense Claim Places at Least $67,309.04 in Controversy.

41.    Plaintiff's Fifth Cause of Action contends that KeyBank violated *Labor Code* § 2802 by failing to reimburse employees for required expenses, including, but not limited to, "certain work station items, such as monitors, computer stands, and computer accessories[;]" and "internet use, utilities, gas, water and rent."  (Pl.'s Compl. ¶77.)

42.    Plaintiff further alleges "[KeyBank] *never reimbursed* Plaintiff . . . for these necessary work-related expenses . . . [and][is] entitled to restitution for all unpaid amounts due and

1  owing to within four (4) years of the date of the filing of the Complaint and until the date of entry

2  of judgment."  (Pl.'s Compl. ¶77 [emphasis added].)

3        43.  California *Labor Code* section 2802(a) states that an employer shall indemnify an

4  employee for all necessary expenditures or losses incurred by the employee in direct consequence

5  of the discharge of the employee's duties. Like unpaid minimum wages, overtime wages, and

6  premium wages, business expenses are recoverable as restitution under California Business &

7  Professions Code section 17200. *See Espejo v. The Copley Press, Inc.,* 13 Cal.App.5th 329, 367

8  (2017) (*citing Cortez v. Purolater Air Filtration Products Co.,* 23 Cal.4th 163 (2000)); *see also*

9  *Harris v. Best Buy Stores, L.P.,* 2016 WL 4073327, at *10 (N.D. Cal. 2016).

10        44.  During the Relevant Time Period, Plaintiff worked approximately **23 months.**

11  (Kanthappan Decl. ¶10.)

12        45.  Plaintiff has alleged that KeyBank "never reimbursed" Plaintiff for her necessary

13  work-related expenses during the relevant period. (Pl.'s Compl. ¶ 29.)

14        46.  According to Redfin, an online real-estate brokerage firm that collects data on the

15  housing market, the estimated rent for the single family property at Plaintiff's home address costs

16  approximately **$2,148 per month**, which is based on 6 recent nearby rentals priced between $2,130

17  and $2,170.  (Theofanis Decl. ¶7 Ex. E.)

18        47.  According to the U.S. Bureau of Labor Statistics, Consumer Price Index, the

19  average monthly price for electricity for the period of May 2020 to May 2024 was approximately

20  **$245.96 per month.**  (Theofanis Decl. ¶8 Ex. F.)

21        48.  According to the U.S. Bureau of Labor Statistics, Consumer Price Index, the

22  average monthly price for internet services for the period of May 2020 to May 2024 was **$81.27**

23  **per month.**  (Theofanis Decl. ¶9 Ex. G.)

24        49.  In summary, KeyBank's review of available data from a reputable on-line real-

25  estate brokerage firm, the City of Modesto, and U.S. Bureau of Labor Statistics, confirms the

26  following relevant statistics:

27  ///

28  ///

| Cost | Amount |
|------|--------|
| Rent | **$2,148 per month** |
| Electricity | **$245.96 per month.** |
| Internet | **$81.27 per month.** |
| **Total Amount in Controversy for the Expense Reimbursement Claim = $2,475 per month (x) 23 months = $56,925.** | |

50.      Based on the above expenses, Defendant reasonably assumed **$2,475 per month** for alleged unpaid business expenses.[4]  (Theofanis Decl. ¶10.)

51.      During the Relevant Time Period, Plaintiff worked approximately 23 months. (Kanthappan Decl. ¶10.)

52.      To calculate the value of the assumed unpaid business expenses allegedly owed to Plaintiff for purposes of calculating the amount in controversy, KeyBank multiplied the number of months in which the Plaintiff worked for KeyBank (23) by ($2,475) = $56,925.  In sum, the amount in controversy for this claim is approximately **$56,925.**  (Kanthappan Decl. ¶15.)

            **3.      Plaintiff's Attorneys Fee Claim Places at Least $75,000 in Controversy.**

53.      Plaintiff also seeks to recover an unspecified amount of attorneys' fees. (Pl.'s Compl. ¶¶51, 56, 65, 74, 79, 99; *id.* at p. 18.) The Ninth Circuit held that where an award of attorneys' fees is authorized by statute, a court "must" recognize these fees in the amount in controversy. *See, e.g., Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 416 (9th Cir. 2018) (*quoting Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

---

[4] If this amount is challenged by Plaintiff, Defendant reserves the right to include additional amounts in controversy for other utilities and costs alleged in the Complaint.

54.     The amount of attorneys' fees placed in controversy is the total amount of fees that will likely accrue during the course of litigation. *Lippold v. Godiva Chocolatier, Inc.,* No. C 10–00421, 2010 WL 1526441, at *3–4 (N.D. Cal. Apr. 15, 2010) ("a reasonable estimate of attorneys' fees likely to be expended" should be included in calculating the amount in controversy); *Swans v. Fieldworks, LLC,* No. 222CV07250SPGMRW, 2023 WL 196918, at *2–3 (C.D. Cal. Jan. 17, 2023) ("Defendant has proved beyond a preponderance of evidence that the amount in controversy exceeds $75,000 based on approximately $20,000 in damages and $60,000 in attorneys' fees.").

55.     Attorneys' fees in wage and hour cases asserting individual claims often exceed $100,000. *See, e.g., Martin v. The Old Turner Inn,* 2003 WL 22998402 (Cal. Sup. 2003) (awarding $147,610 in attorneys' fees and costs in a single plaintiff wage and hour case in which the plaintiff recovered $49,508 in damages); *Cappuccio v. Pepperdine University,* Case. No. 13- cv-3125-DSF-AJWx, 2014 WL 12573366, at *5-6 (C.D. Cal. Sept. 29, 2014) (awarding $102,153.75 in attorneys' fees and costs in a single plaintiff case for violations of the Fair Labor Standards Act in which plaintiff recovered $120,000 in economic damages).

56.     Also, courts have recognized that "an attorney handling an individual wage-and-hour case 'typically spends far more than 100 hours on the case'." *Swans,* 2023 WL 196918, at *3 (quoting Hernandez, 2020 WL 5496172, at *5); *see also Lippold,* 2010 WL 1526441, at *4 (asserting that a "typical individual wage and hour case" can generate fees in excess of $100,000 when using a $400 per hour rate for attorneys' fees to meet the amount in controversy); *Hernandez v. Aramark Food & Support Servs. Grp., Inc.,* No. 20-CV-03633-EJD, 2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (same); *Sasso v. Noble Utah Long Beach, LLC,* No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours.").

57.     Here, Plaintiffs' counsel David Yeremian submitted a declaration in connection with a motion for an attorneys fee award in a recent wage and hour matter, *NATASHA R. VALENZUELA, an individual, on behalf of herself and others similarly situated, Plaintiff, vs. NETWORK MEDICAL MANAGEMENT, INC., a California corporation; and DOES 1 through 50,*

*inclusive, Defendants* (LA Superior Court Case No. 21STCV39548).  (Theofanis Decl. ¶5 Ex. D [Yeremian Decl.].)  Mr. Yeremian's declaration states his billable rate as of the date of the declaration, February 28, 2023 was $725 per hour since 2021.

58.     Here, 100 hours at an billable rate of $725 per hour is a conservative estimate. Mr. Yeremian is listed as one of the lead counsel in this case and has previously attested to his hourly rate being $725 per hour in another wage and hour matter in 2023.  KeyBank expects Plaintiff's counsel will spend far in excess of 100 hours on this matter given anticipated pre-discovery litigation, including conferences on various responsive motions, stipulations on briefing schedules regarding the same, and briefing various responsive motions. (Theofanis Decl. ¶6.)

59.     Thus, conservatively assuming **100 hours** of work on this matter, and conservatively estimating an average billable rate for Plaintiff's counsel of $725/hour, Plaintiff's request for attorney's fees conservatively places **$72,500** in controversy for attorney fees alone.

### 4.     Summary of Amount in Controversy

60.     As set forth above, and while KeyBank denies that Plaintiff is entitled to recover any such amounts, the allegations in the Complaint satisfy the requisite $75,000 amount in controversy for purposes of removal under 28 U.S.C. Sections 1332, 1441(a) and 1446:

| Alleged Damages | Amount in Controversy |
|---|---|
| Third Cause of Action for Failure to Provide Accurate Written Wage Statements | $2,150 |
| Fifth Cause of Action for Failure to Indemnify | $56,925 |
| **SUBTOTAL** | $59,075 |
| **Attorneys' Fees** | $72,500 |
| **TOTAL** | **$131,575** |

## IV.   PLAINTIFF'S COMPLAINT IS REMOVABLE PURSUANT TO THE CAFA

61.     As set forth below, Plaintiff's claims, as alleged in the Complaint, are removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

62.     Under CAFA, the Federal District Court has jurisdiction if: (a) There are at least 100 class members in all proposed plaintiff classes; (b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and (c) any class member (named or not) is a citizen of a different state than any KeyBank. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

**A.     There Are At Least 100 Class Members in the Proposed Class.**

63.     Plaintiff purports to bring this action on behalf of all persons employed by KeyBank within the past four years.  (Pl.'s Compl. ¶11.)

64.     Plaintiff alleges "[t]he class members are so numerous that the individual joinder of each individual class member is impractical." (Pl.'s Compl. ¶13.)

65.     Based on a review of KeyBank's business records, KeyBank employed approximately **270 individuals** who worked at least one shift in the State of California (collectively, "putative class members") at some time during the period from May 13, 2020 to May 24, 2024 (the "Data Period").  (Kanthappan Decl. ¶12.)  Absent a few days that continue to tick forward, the Data Period encompasses the entire Relevant Time Period and is therefore sufficient to calculate the amount in controversy.

66.     Since KeyBank collectively employed at least 270 putative class members in the Data Period, which is shorter than the Relevant Time Period, and since 270 is greater than 100, KeyBank have established the first requirement for CAFA jurisdiction.

**B.     The Requisite $5 Million Amount In Controversy Is Satisfied.**

**1.     The Standard for Establishing the Amount in Controversy**

67.     CAFA authorizes the removal of class-action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

68.     To establish the amount in controversy, "the notice of removal must include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Schneider v. Ford Motor Co*., 756 F. App'x 699, 700 (9th Cir. 2018) (*quoting Dart Cherokee Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

69.     So long as KeyBank establishes that the amount-in-controversy could exceed the jurisdictional threshold under CAFA, the case is removable. *Rea v. Michaels Stores, Inc*., 742 F.3d

1234, 1239 (9th Cir. 2014) (defendant need only establish "that the potential damages could exceed" $5 million (emphasis added)). As established below, KeyBank's notice of removal leaves no question that the amount in controversy could exceed $5 million and therefore, the case is removable under CAFA.

### 2.    Relevant Class Member Data

70.    KeyBank's business records covering the Data Period (which is shorter than the Relevant Time Period) confirms that KeyBank employed at least 270 putative class members during the Relevant Time Period.  (Kanthappan Decl. ¶12.)

71.    KeyBank's business records covering the Data Period (which is shorter than the Relevant Time Period) confirms the putative class members worked **5,199 months** during the Relevant Time Period.  (Kanthappan Decl. ¶13.)

### 3.    Calculating the Amount In Controversy for Removal

#### (a)    Plaintiff's allegations place over $12M in controversy.

72.    This claim is based on the same allegations as Plaintiff's individual claim. (Pl.'s Compl. ¶¶75-79.)

73.    During the Relevant Time Period, the putative class members worked **5,199 months**. (Kanthappan Decl. ¶13.)

74.    To calculate the amount in controversy for Plaintiff's expense reimbursement claim, Defendant multiplied the amount used for the Plaintiff ($2,475 per month), as the cost of living in Plaintiff's residence in Modesto, California is less than the average California city.  (Theofanis Decl. ¶11 Ex. H [article and report ranking Modesto as 356th most expensive city in California for household bills out of 482 towns and cities in the state].)  Multiplying the total months in the class period (5,199) (x) ($2,475) = **$12,867,525** as the amount in controversy for this claim. (Kanthappan Decl. ¶17.)

#### (b)    Plaintiff's attorney fees could also be added to the amount in controversy.

75.    Plaintiff also seeks attorneys' fees on behalf of the putative class.  (Pl.'s Compl. ¶¶51, 56, 65, 74, 79, 99; *id.* at p. 18.) Attorneys' fees are properly included in the amount in

controversy.  *See Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

76.    In wage and hour class actions, courts commonly use a 25% benchmark for attorneys' fees when analyzing the amount in controversy.  *See, Ortega v. Loyal Source Government Services LLC,* No. 3:20-cv-0879-LAB-NLS, 2022 WL 378426, at * 4 (S.D. Cal. Feb. 7, 2022) (upholding 25% attorneys' fees request in wage and hour class action as "equal to the Ninth Circuit's benchmark rate" for class actions and "reasonable.")

77.    Plaintiff's counsel in this case often seeks an award of attorneys' fees for settlements of wage and hour class actions equal to at least 25% of the common fund.  *Felix v. WM. Bolthouse Farms, Inc*., No. 1:19-cv-00312-AWI-JLT, 2020 U.S. Dist. LEXIS 2354, at *22-23 (E.D. Cal. Jan. 7, 2020) ["[c]lass counsel requests attorneys' fees that total $39,425.00, which represents 33% of the $118,275.00 common fund") *Soto v. O Reilly Auto Enters*., LLC, No. EDCV 20-214 JGB (KKx), 2023 U.S. Dist. LEXIS 39113, at *21 (C.D. Cal. Mar. 6, 2023) ("Class Counsel seeks an attorneys' fees award of $237,500 which represents 25% of the $950,000 common fund."); (Theofanis Decl. ¶5 Ex. D [Seeking "35% of the Maximum Settlement Amount"].)

78.    Therefore, it is reasonable to multiply by 25% the amount placed in controversy by all other claims to determine the amount in controversy by Plaintiff's request for attorneys' fees.

79.    Here, the amount in controversy is easily established even if attorneys' fees are not considered.  KeyBank's conservatively estimated amounts in controversy for Fifth Cause of Action for Failure to Indemnify: $12,867,525.  Adding 25% for attorney fees would add an additional $3,216,881 to the amount in controversy, for a total of **$16,084,406**.  (Kanthappan Decl. ¶¶18-19.)

### 4.    Summary of Amount in Controversy

80.    As set forth above, the allegations in the Complaint satisfy the requisite $5 million amount in controversy for purposes of removal under CAFA:

///

///

| **Alleged Damages** | **Amount in Controversy** |
|---|---|
| Fifth Cause of Action for Failure to Indemnify | $12,867,525. |
| Attorneys' Fees (25%) | $3,216,881 |
| **TOTAL = $16,084,406** | |

**C.    Any Class Member Is A Citizen Of A Different State Than Any Defendant.**

81.    For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and one named KeyBank. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

82.    As explained above, there is complete diversity between Plaintiff, a citizen of the State of California, and KeyBank a citizen of the State of Ohio.

83.    Additionally, Members of the proposed class are, or were, by definition, "employed by [KeyBank] . . . in California" and are presumed to be primarily citizens of the State of California. *See* Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship.).  Thus, even if Plaintiff is not considered to be a citizen of California, and was instead deemed to be a citizen of another state (and to be clear, there is no evidence that is the case), the hundreds of other putative class members she seeks to represent, all of whom, by virtue of the allegations in the Complaint, necessarily worked in California (Pl.'s Compl. ¶11), are citizens of California.

**V.    VENUE**

84.    Venue lies in this Court because Plaintiff's action is pending in this district and division. See 28 U.S.C. § 1441(a). Under United States Code, Title 28, Section 1441(a), this case may properly be removed to the Northern District of California because Plaintiff filed this case in the Superior Court of California, County of Contra Costa. Additionally, KeyBank is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.

**VI.    SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446**

85.    In accordance with United States Code, Title 28, Section 1446(a), Exhibits A-C to the Declaration of George J. Theofanis constitute a copy of all processes, pleadings, and orders

DEFENDANT'S NOTICE OF REMOVAL OF COMPLAINT TO FEDERAL COURT

either served upon or by KeyBank. As required by United States Code, Title 28, Section 1446(b), the Notice of Removal was filed within 30 days after KeyBank was served with Plaintiff's Complaint. As required by United States Code, Title 28, Section 1446(d), KeyBank will provide notice of this removal to Plaintiff through her attorneys of record and a copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Contra Costa.

## VII.    CONCLUSION

86.    Because this civil action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs, KeyBank respectfully requests that this Court exercise its removal jurisdiction over this action.

87.    Alternatively, this Court has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441

88.    In the event this Court has a question regarding the propriety of this Notice, KeyBank requests the Court set an evidentiary hearing so that it may have an opportunity to more fully brief the Court on the basis for this removal.

WHEREFORE, KeyBank removes this action to this Court.

DATED:  June 20, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ George J. Theofanis
        Michael J. Nader
        George J. Theofanis

Attorneys for Defendant KEYBANK NATIONAL ASSOCIATION