Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
George J. Theofanis, SBN 324037
george.theofanis@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA 95814
Telephone: 916-840-3150
Facsimile: 916-840-3159

Attorneys for Defendant
KEYBANK NATIONAL ASSOCIATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

PORSHA McDANIELS, on behalf of herself and all others similarly situated, and the general public

Plaintiff,

vs.

KEYBANK NATIONAL ASSOCIATION, a domestic corporation; and DOES 1 through 50, inclusive

Defendant.

Case No. 4:24-cv-03691-AGT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT KEYBANK NATIONAL ASSOCIATION'S MOTION TO COMPEL ARBITRATION**

Date: August 16, 2024
Time: 10:00 a.m.
Location: Courtroom A – 15th Floor

[Filed concurrently with Notice of Motion and Motion to Compel Arbitration, Declarations of Jessika Poldruhi and George J. Theofanis, and [Proposed] Order]

[Contra Costa Superior Court Case No. C24-01273]

Action Filed: 5/13/2024
Trial Date: TBD

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 1

A. Plaintiff Agreed to Submit Disputes Arising Out of Her Employment with KeyBank to Binding Arbitration On An Individual And Not Representative Basis. ..... 1

B. Defendant Attempted to Obtain a Stipulation to Arbitrate. ..... 3

III. LEGAL ARGUMENT ..... 3

A. Plaintiff Is Required To Submit Her Claims to Arbitration On An Individual Basis. ..... 3

1. The FAA Governs Enforcement of the Arbitration Agreement. ..... 3

B. The Arbitration Agreement is valid, binding, and enforceable. ..... 4

1. Plaintiff agreed to arbitrate her individual claims. ..... 4

2. The Arbitration Agreement Encompasses Plaintiff's Individual Claims and Contains an Express Class Action Waiver. ..... 6

C. The Arbitration Agreement is not Unconscionable. ..... 7

1. Plaintiff's Arbitration Agreement is not procedurally unconsnionable. ..... 7

2. Plaintiff's Arbitration Agreement is not substantively unconscionable. ..... 8

(a) Neutral Arbitrator. ..... 9

(b) Adequate Discovery. ..... 9

(c) Written Arbitration Award. ..... 10

(d) No Limitation of Remedies. ..... 10

(e) Arbitration Costs ..... 10

IV. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**


*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .......... 3

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 4, 6, 7, 11

*AT&T Techs. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 4

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) .......... 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) .......... 6, 7

*Kelly v. Key Corp.*,
No. 23-CV-6569-DGL-MJP, 2024 U.S. Dist. LEXIS 46312 (W.D.N.Y. Mar. 15, 2024) .......... 6

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996) .......... 6

*Morvant v. P.F. Chang's China Bistro, Inc.*,
870 F. Supp. 2d 831 (N.D. Cal. 2012) .......... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 4, 6

*Nanavati v. Adecco USA, Inc.*,
99 F. Supp. 3d 1072 (N.D. Cal. 2015) .......... 6

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (2017) .......... 7

*Radcliff v. San Diego Gas & Elec. Co.*,
No. 3:20-cv-01555, 2020 WL 6395677 (S.D. Cal. Nov. 2, 2020) .......... 7

*Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 19, 2021) ........ 5

**State Cases**

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004) ........ 9

*Aviation Data, Inc. v. Am. Express Travel Related Servs. Co.*, 152 Cal. App. 4th 1522 (2007) ........ 3

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332 (2015) ........ 8, 9

*Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373 (2016) ........ 5

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., L.L.C.*, 55 Cal. 4th 223 (2012) ........ 8

*Ruiz v. Moss Bros. Auto Group, Inc.* 232 Cal. App. 4th 836 (2014) ........ 4

*Sanchez v. Valencia Holding, Co., LLC*, 61 Cal. 4th 899 (2015) ........ 8

*Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165 (2015) ........ 7

**Federal Statutes**

Federal Arbitration Act ........ *passim*

**State Statutes**

Business & Professional Code § 17200 et seq. ........ 2

California Civil Code § 1633.1 ........ 4

California Labor Code:

Labor Code § 201 ........ 2

Labor Code § 202 ........ 2

Labor Code § 203 ........ 2

Labor Code § 223 ........ 2

Labor Code § 226(a) .......... 2

Labor Code § 246 .......... 2

Labor Code § 510 .......... 2

Labor Code § 1194 .......... 2

Labor Code § 1194.2 .......... 2

Labor Code § 1197 .......... 2

Labor Code § 1197.1 .......... 2

Labor Code § 1198 .......... 2

Labor Code § 2802 .......... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff PORSHA McDANIELS ("Plaintiff") filed a putative wage and hour class action lawsuit against her current employer, Defendant KEYBANK NATIONAL ASSOCIATION ("Defendant" or "KeyBank"), on May 13, 2024, in Contra Costa Superior Court alleging six (6) causes of action arising out of her employment with KeyBank. But Plaintiff is bound by an arbitration agreement containing a class action waiver and requiring final and binding arbitration of any claims related to Plaintiff's employment on an individual basis only. As demonstrated below, the agreement to arbitrate is valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Therefore, KeyBank respectfully requests this Court issue an Order compelling Plaintiff to comply with her contractual obligation to arbitrate her individual claims and to dismiss her class claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Agreed to Submit Disputes Arising Out of Her Employment with KeyBank to Binding Arbitration On An Individual And Not Representative Basis.

On April 19, 2022, Plaintiff completed an application for employment with KeyBank. (Declaration of Jessika Poldruhi ("Poldruhi Decl.") ¶¶7, 23-27, Exs. A, N-O.) As part of the application process, KeyBank and Plaintiff *mutually* agreed to binding arbitration of any disputes arising out of Plaintiff's employment on an individual and not representative basis (the "Arbitration Agreement"). (Poldruhi Decl. ¶¶7-27 Exs. A-O.) The Arbitration Agreement clearly states that Plaintiff is prohibited from bringing any claims against Defendant on a class-wide basis:

> As a condition of [KeyBank][1] consideration of your application for employment and, if applicable, employing you, the Parties agree to resolve *any and all legal claims, disputes or controversies arising out of or relating to your application for and employment with [KeyBank]* and termination from employment with [KeyBank], if applicable, exclusively *by final and binding arbitration*.

[1] The Arbitration Agreement provides that, "for purposes of the scope of the obligation to arbitrate, which shall be construed broadly, "Key" shall include KeyCorp, KeyBank, KeyBanc Capital Markers, Inc., and all of their affiliates, subsidiaries, divisions, brands, . . ." (Poldruhi Decl.. ¶17; Ex. I ¶1 fn. 1.)

> […]
> To the maximum extent permitted by law, (a) the arbitrator is *prohibited from consolidating the claims of others into one proceeding or fashioning a proceeding as a class, collective, representative, joint, or group action* (collectively, "Class Action") or awarding relief to a group of claimants or employees in one proceeding, and (b) the Parties *waive any right to proceed in a Class Action* . . .
>
> […]
> Claims subject to this Agreement include without limitation all claims pertaining to your application to, employment by, or termination of employment with [KeyBank] . . . *including claims for unpaid wages, overtime, or commissions* . . . .
>
> […]

(Poldruhi Decl. ¶17 Ex. I ¶¶1, 4, 6 (emphasis added).)

Plaintiff signed the Arbitration Agreement to confirm that she read the Arbitration Agreement, had the opportunity to discuss it with KeyBank or her own legal counsel, understood its terms and agreed to them. (Poldruhi Decl. ¶¶17-21 Exs. I-L.) She did so by using her email address and unique password for logging into her Workday account with KeyBank and then applying her electronic signature to the Arbitration Agreement. (Poldruhi Decl. ¶¶11-13 Exs. C-F; *Id.* at ¶¶ 23-27 Exs. N-O.) Plaintiff further acknowledged and agreed that, by entering into the Arbitration Agreement, she and KeyBank were waiving their rights to a judicial forum and a jury trial for the determination of any covered claims or disputes. (Poldruhi Decl. ¶17 Ex I p. 5.) Thus Plaintiff expressly and unequivocally agreed to arbitrate any and all claims relating to her employment on an individual basis only.

Despite her agreement to arbitrate her claims on an individual basis, Plaintiff filed a class action in Contra Costa County on May 13, 2024, asserting claims on behalf of all current and former employees of KeyBank in the State of California. (Declaration of George J. Theofanis ("Theofanis Decl.") ¶2 Ex. A [Pl.'s Compl].) Plaintiff alleges the following class claims based on alleged violations of the California Labor Code: (1) Failure to Pay Hourly Wages and Overtime (Lab. Code, §§ 223, 510, 1194, 1194.2, 1197, 1197.1 and 1198); (2) Failure to Pay Proper Sick Pay (Lab. Code, § 246); (3) Failure to Provide Accurate Written Wage Statements (Lab. Code, § 226(a)); (4) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); (5) Failure to Indemnify (Lab. Code, § 2802); and (6) Unfair Competition. (Bus. & Prof. Code, § 17200 et seq.)

(Pl.'s Compl.) Because these claims fall squarely within the scope of the parties' Arbitration Agreement, Plaintiff's individual claims must be compelled to arbitration, and her class claims dismissed.

**B. Defendant Attempted to Obtain a Stipulation to Arbitrate.**

On June 12, 2024, Defendant's counsel contacted Plaintiff's counsel to meet and confer regarding this matter being subject to arbitration. (Theofanis Decl. ¶3 Ex. B.) Defendant's counsel (a) provided Plaintiff's counsel with a copy of the Arbitration Agreement along with detailed documentation showing Plaintiff's review and acceptance of the Arbitration Agreement, and (b) requested Plaintiff's counsel to review the documentation, and inform Defendant if Plaintiff was agreeable to stipulating to arbitration. (*Id.* at ¶¶3-4 Exs. B-C.) Plaintiff declined to stipulate to arbitration, which required Defendant to bring this motion. (*Ibid.*)

## III. LEGAL ARGUMENT

### A. Plaintiff Is Required To Submit Her Claims to Arbitration On An Individual Basis.

#### 1. The FAA Governs Enforcement of the Arbitration Agreement.

Pursuant to its terms, the FAA governs enforcement of the Arbitration Agreement. When an agreement specifically calls for enforcement under the FAA, the FAA shall apply. *See Aviation Data, Inc. v. Am. Express Travel Related Servs. Co.,* 152 Cal. App. 4th 1522, 1534-35 (2007) (holding that because arbitration agreement stated it was subject to the FAA, the FAA applied despite the existence of other provisions stating that the agreement would be governed by New York Law). Here, Plaintiff and Defendant clearly and unmistakably agreed that the Arbitration Agreement "shall be enforceable pursuant to and interpreted in accordance with the provisions of the Federal Arbitration Act ("FAA") and that the Parties are subject to the FAA and not any state arbitration law." (Poldruhi Decl. ¶17 Ex. I ¶1.)

In addition, the United States Supreme Court has broadly interpreted the phrase "involving commerce" as the functional equivalent of "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). It is well-settled that corporations with multi-state business operations are engaged in "commerce" for purposes of the FAA. *Id.* at 282 (1995) ["the multi-

state nature" of defendants' business operations satisfied FAA's commerce requirement]. Here, as a national bank, KeyBank is clearly engaged in "commerce" for purposes of the FAA. (Declaration of Adam Larkins in support of Removal Dkt. No. 4 p. 2 ¶4.)

**B. The Arbitration Agreement is valid, binding, and enforceable.**

When considering a motion to compel arbitration, the Court must answer two questions: (1) does a valid agreement to arbitrate exist; and, if it does, (2) does the arbitration agreement encompass the dispute or claims at issue? *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Court must compel arbitration if the answer to both of these questions is affirmative. *Id*. Supreme Court precedent also requires the Court to apply a presumption of arbitrability such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Here, the answer to both questions is yes, and so, the Court should grant Defendant's Motion to Compel.

**1. Plaintiff agreed to arbitrate her individual claims.**

The threshold issue is whether Plaintiff agreed to arbitrate, and she did. Under California law, "an electronic signature has the same legal effect as a handwritten signature." *Cal. Civ. Code* § 1633.1; *Ruiz v. Moss Bros. Auto Group, Inc.* 232 Cal. App. 4th 836, 843 (2014). The burden of authenticating an electronic signature is minimal. (*Id.* at 843-45.) To refuse to enforce an arbitration agreement because it contains electronic signatures or to impose a higher burden for authenticating such a signature would violate the United States Supreme Court's requirement that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (internal citations omitted).

Here, it is clear Plaintiff agreed to be bound by the Arbitration Agreement. To be eligible for hire by KeyBank, a candidate must submit an employment application ("Application") through Workday. (Poldruhi Decl. ¶7 Ex. A.) To access the Application, all candidates were required to enter their email address and unique password associated with his or her account with KeyBank on Workday. (*Id.* at ¶¶10-12 Exs. B-D.) Before proceeding further in the Application, candidates

were required to consent to access, receive, review, sign, and authenticate certain documents, forms, and/or letters ("E-Signature Consent"). (*Id.* at ¶13 Ex. F.) After reviewing the E-Signature Consent language, if the candidate did not check the "I Agree" box they could not continue further in the Application. (*Id.*)

In the Terms and Conditions section of the Application, candidates were presented with a link to the Arbitration Agreement, above which it states that "I understand that my application will not be accepted and I will not be permitted to proceed further in the pre-employment process unless I indicate I have read and agree to the Arbitration Agreement and the Agreement to Sever." (Poldruhi Decl. ¶17 Ex. I.) The candidate was not permitted to continue further in the Application unless the candidate checked the "I agree" box indicating that the candidate read the Arbitration Agreement, had the opportunity to discuss the Arbitration Agreement with KeyBank and his or her own legal counsel, understood its terms, and agreed that both the candidate and KeyBank were agreeing to those terms. (*Id.* at ¶18 Ex. J.) The candidate also was required to acknowledge and agree that, by entering into the Arbitration Agreement, both KeyBank and the candidate were waiving rights to a judicial forum and a jury trial for the determination of any covered claims or disputes. (*Id.*)

Following this process, the evidence shows Plaintiff submitted her application and agreed to the Arbitration Agreement after logging into Workday using her email and unique password on April 19, 2022. (Poldruhi Decl. ¶¶23-27 Exs. N-O.) A confirmation email was sent to Plaintiff on April 19, 2022 confirming that KeyBank received the Application, including Plaintiff's "***electronic signature of the Arbitration Agreement agreeing to resolve all covered claims exclusively by final and binding arbitration.***" (*Id.* at. ¶¶24-27 Ex. O.)

Plaintiff's electronic signature formed an Arbitration Agreement between the parties. See *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 384 (2016) (finding that an employee cannot avoid arbitration by claiming that he never read or signed an arbitration agreement when he electronically acknowledged receipt of the document); see also *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (finding parties formed agreement to arbitrate based on evidence that plaintiff electronically signed arbitration

agreement); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (same). And recently, in *Kelly v. Key Corp.*, No. 23-CV-6569-DGL-MJP, 2024 U.S. Dist. LEXIS 46312 (W.D.N.Y. Mar. 15, 2024), a federal court in New York granted KeyBank's Motion to Compel Arbitration where the arbitration agreement and process of applying for a job were almost the same as the one in this case. Accordingly, there can be no dispute that Plaintiff agreed to individually arbitrate her claims pursuant to the Arbitration Agreement.

**2. The Arbitration Agreement Encompasses Plaintiff's Individual Claims and Contains an Express Class Action Waiver.**

Agreements to arbitrate employment claims, including wage and hour-related claims, are enforceable under the FAA. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding that "having made the bargain to arbitrate [employment claims], the parties should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (holding that overtime claims are subject to arbitration); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 840-41 (N.D. Cal. 2012) (compelling individual arbitration of claims).

Here, the Arbitration Agreement states that "the Parties agree to resolve any and all legal claims, disputes or controversies arising out of or relating to your application for and employment with [KeyBank] and termination from employment with [KeyBank], if applicable, exclusively by final and binding arbitration. (Poldruhi Decl. ¶17; Ex. I ¶1.) This "broad form" arbitration agreement holds a strong presumption of arbitrability. *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (noting the broader the arbitration clause, the stronger the presumption of arbitrability and doubts as to whether an asserted dispute is covered by an arbitration clause "should be resolved in favor of coverage"); *accord Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Here, Plaintiff's claims clearly arise out of her employment with KeyBank, and thus fall within the scope of the Arbitration Agreement.

Arbitration agreements must be enforced in accordance with the agreed upon terms of the parties. See *AT&T Mobility LLC v. Concepcion, supra*, 563 U.S. 333. Here, the Arbitration

Agreement also contains an explicit class action waiver by clearly stating that Plaintiff is prohibited from bringing any claims against KeyBank on a class-wide basis. (Poldruhi Decl. ¶17; Ex. I ¶4.)

The Supreme Court has repeatedly made clear, most recently in *Epic Systems*, that such class action waivers in arbitration agreements are enforceable:

> The parties before us contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized rather than class or collective action procedures. And this much the [Federal] Arbitration Act seems to protect pretty absolutely.

138 S. Ct. at 1622-23 (citing *Concepcion*, 563 U.S. at 333.) As a result, the Supreme Court has emphasized that arbitration agreements requiring bilateral arbitration containing a class action waiver – like the one at issue here – must be enforced, even in the face of contrary state law. See *id*. (enforcing the class action waiver and holding that the FAA preempts California's judicial rule regarding the unconscionability of class arbitration waivers in contracts); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 56-59 (2015) (enforcing the arbitration agreement with class action waiver and concluding that the FAA preempts California law as to the enforceability of the class action waiver). Thus, the Court should enforce Plaintiff's class action waiver and dismiss her class claims, and compel Plaintiff to arbitrate her individual claims.

### C. The Arbitration Agreement is not Unconscionable.

#### 1. Plaintiff's Arbitration Agreement is not procedurally unconsnionable.

Procedural unconscionability "focuses on the elements of oppression and surprise." *Serafin v. Balco Props. Ltd., LLC,* 235 Cal. App. 4th 165, at 177 (2015). The "oppression" element "arises from an inequality of bargaining power[.]" *Id.* However, the United States Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees" and "mere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable. *Gilmer*, 500 U.S. at 33; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (2017) (an adhesion contract is not per se unconscionable); *Radcliff v. San Diego Gas & Elec. Co.,* No. 3:20-cv-01555, 2020 WL 6395677, at *4 (S.D. Cal. Nov. 2, 2020) ("[C]ases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis") (citation omitted);

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015) ("We recognize that showing a contract is one of adhesion does not always establish procedural unconscionability").

The "surprise" element goes to the extent to which the arbitration agreement is "hidden in a prolix printed form" drafted by the party seeking to compel arbitration. *See Pinnacle*, 55 Cal. 4th at 247; *see also Sanchez v. Valencia Holding, Co., LLC*, 61 Cal. 4th 899, 914 (2015) (holding that defendant "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause [plaintiff's] attention. Any state law imposing such an obligation would be preempted by the FAA.").

Here, there is no evidence of "surprise" because Plaintiff was informed before she signed the Arbitration Agreement that signing it was a condition of employment. (Poldruhi Decl. ¶¶17-18 Exs. I-J.) Additionally, the terms are clear, as the Agreement is clearly labeled, was not hidden within other documents, and is five pages long. (*Id.* at ¶17 Ex. I.) Further, it specifically states in bold and all caps at the end of the Arbitration Agreement that Plaintiff acknowledges that she read the agreement, has had the opportunity to discuss the terms with KeyBank or her own legal counsel, understands its terms, and that arbitration shall replace a jury trial in the event of a dispute with the employer in capital letters. (*Id.* at ¶17 Ex. I p.5.) Plaintiff was given ample opportunity to review the Arbitration Agreement before executing, in fact, she could access it at any time electronically, and/or print a copy to review either at home. Thus, she could have taken the Arbitration Agreement home with her to review. (*Id.* at ¶¶20-22 Exs L-M.) Plaintiff, therefore, cannot claim to be surprised by these terms, and she cannot establish that the Arbitration Agreement is procedurally unconscionable.

**2. <u>Plaintiff's Arbitration Agreement is not substantively unconscionable.</u>**

Assuming *arguendo* the Court somehow determined the Arbitration Agreement was procedurally unconscionable, it would remain enforceable because none of its terms are substantively unconscionable. *See Armendariz*, 24 Cal. 4th at 113-14; *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., L.L.C.*, 55 Cal. 4th 223, 246 (2012) (both procedural and substantive unconscionability necessary to render contract unenforceable). The key factor in assessing

substantive unconscionability is mutuality and, specifically, whether the agreement lacks mutuality. *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, 664 (2004). To make this determination, the Court must decide whether the contract's actual terms are "so one-sided as to shock the conscience." *Grand Prospect Partners, L.P.*, 232 Cal. App. 4th at 1347 (citations omitted).

Here, substantively unconscionable does not exist because the Arbitration Agreement complies with the standards articulated by California courts. Under *Armendariz*, an arbitration agreement must (1) provide for neutral arbitrators; (2) provide for more than minimal discovery; (3) require written award; (4) provide for all types of relief otherwise available in court; and (5) not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. 24 Cal. 4th at 102. Each of these standards are met here.

**(a) Neutral Arbitrator.**

*Armendariz* requires that the arbitration agreement provide for a neutral arbitrator. *Armendariz*, 24 Cal.4th at 103. Here, the parties agreed "the American Arbitration Association ("AAA") will administer the arbitration pursuant to its then applicable Employment Arbitration Rules (the "Rules") . . . ." (Poldruhi Decl. ¶17; Ex. I ¶2.)

Here, AAA uses a third-party organization that is removed from the dispute at issue and does not have a stake in the matter. The AAA method is virtually guaranteed to provide a neutral arbitration, and this element is satisfied under *Armendariz*. Thus, the Arbitration Agreement provides for a neutral arbitration.

**(b) Adequate Discovery.**

Parties involved in arbitration are "at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)." *Armendariz*, 24 Cal.4th at 106.

Here, the Arbitration Agreement provides "[i]n deciding the causes of action asserted, the arbitrator shall apply . . . the substantive law of the state in which the claim(s) arose and/or federal law, as applicable." (Poldruhi Decl. ¶17; Ex. I ¶3.) It also provides " [t]he arbitrator shall have the

authority to issue subpoenas to compel the production of documents during discovery and the attendance of witnesses at the arbitration hearing . . ." (*Id.*)

The Arbitration Agreement ensures that Plaintiff and KeyBank will both be provided adequate discovery in arbitration. Moreover, there is certainly no language limiting any parties' ability to conduct discovery, as in *Armendariz*. Thus, this element is satisfied. Therefore, the Arbitration Agreement provides for more than minimal discovery.

**(c) Written Arbitration Award.**

Written findings are required to ensure the limited judicial review of an arbitration award that is "necessary to ensure that an arbitrator's decision is consistent with the protection of an employee's rights." *Armendariz*, 24 Cal.4th at 107. Here, the Arbitration Agreement provides "[t]he arbitrator shall render a written award setting forth findings of fact and conclusions of law." (Poldruhi Decl. ¶17; Ex. I ¶3.) Accordingly, the requirement for a written arbitration award is met.

**(d) No Limitation of Remedies.**

Employers cannot restrict an employee's right to recover any substantive remedies afforded by statute. (*Armendariz*, 24 Cal.4th at 103-04.) Here, the Arbitration Agreement provides "[i]n deciding the causes of action asserted, the arbitrator shall apply, and shall not deviate from, the substantive law of the state in which the claim(s) arose and/or federal law, as applicable" and "the arbitrator shall have the power to award all legal and equitable relief that would be available in court under applicable law." (Poldruhi Decl. ¶17; Ex. I ¶3.)

The Arbitration Agreement also provides "[t]he arbitrator may award reasonable fees and costs or any portion thereof to the prevailing party to the same extent a court would be entitled to do so, in accordance with applicable law." (Poldruhi Decl. ¶17; Ex. I ¶10.) Accordingly, all remedies that are available to Plaintiff on an individual basis in a judicial forum are also available to her under the Arbitration Agreement.

**(e) Arbitration Costs**

Employees cannot be required to "bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, 24 Cal.4th at

110-11.) Further, "the employer [must] pay all types of costs that are unique to arbitration" including the arbitrator's fees. (*Id.* at 113.) Here, the Arbitration Agreement provides:

> Key will pay all costs unique to arbitration, including the arbitration fees and expenses. However, if you are the party intimating the claim you shall be responsible for contributing an amount equal to the filing fee to initiate the claim in your home state, unless the arbitrator determines such fee should be waived due to a showing of reasonable need.

(Poldruhi Decl. ¶17; Ex. I ¶10.)

Here, the only expense Plaintiff may pay is a filing fee just like if she were bringing the action in court. In sum, because the Arbitration Agreement is not unconscionable and meets all the requirements of *Armendariz*, it should be enforced. Moreover, as noted herein above, it is improper to allow state rules pertaining to unconscionability to effect the enforcement of an arbitration agreement under the FAA. *AT&T Mobility L.L.C.,* 563 U.S. at 341.

Accordingly, the Arbitration Agreement is not unconscionable and must be enforced according to its terms, both those which are explicit or implied.

## IV. CONCLUSION

For the foregoing reasons, KeyBank respectfully requests the Court to issue an order compelling Plaintiff to arbitrate her individual claims and to dismiss her class claims.

DATED: July 8, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: [signature]
Michael J. Nader
George J. Theofanis

Attorneys for Defendant KEYBANK NATIONAL ASSOCIATION